# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MONTEZ HALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 3:20-cv-00646** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

## <u>MEMORANDUM</u>

Before the court is Montez Hall's Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (Doc. No. 1), seeking to set aside his June 2012 conviction for violating 18 U.S.C. § 924(c) in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). Although Hall previously litigated a motion under § 2255, the Sixth Circuit has authorized the filing of this second § 2255 motion in light of *Davis*. *See In re Hall*, No. 19-6223 (6th Cir. June 29, 2020).

For the reasons set forth herein, the motion will be denied.

## I.    BACKGROUND

Hall was one of twelve individuals charged on January 5, 2012 in a twenty-eight count Second Superseding Indictment. *United States v. Newsome*, No. 3:10-cr-00163 (M.D. Tenn. Jan. 5, 2012) (Crim. Doc. Nos. 1147).[1] The charges pertaining specifically to Hall included conspiracy to participate in racketeering activity, in violation of 18 U.S.C. § 1962(d) (Count One); murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Count Six); using and carrying a firearm

---

[1] The court will cite to documents filed in the underlying criminal proceedings as "Crim. Doc. No. __" and to documents filed in this post-conviction proceeding as "Doc. No. __."

during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Seven); murder resulting from using or carrying firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(j) (Count Eight); conspiracy to use or carry firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(o) (Count Twenty-Seven); and conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Twenty-Eight). (Crim. Doc. Nos. 1147, 1147-9, at 2.)

On February 5, 2012, Hall entered into a binding Plea Agreement with the United States and, in conjunction therewith, submitted to the court a Petition to Enter a Plea of Guilty to Counts One and Seven in exchange for the government's dismissal of the four remaining counts against him. (*See* Crim. Doc. No. 1394, at 1–5, 7–14.) There was no agreement on the sentence he would receive. The court accepted the plea and binding Plea Agreement by order entered February 6, 2012. (*Id.* at 6.) Only the conviction on Count Seven is at issue here. That count, as set forth in the Second Superseding Indictment, charged as follows:

> 34. On or about July 19, 2008, in the Middle District of Tennessee, the defendants [27] KEAIRUS WILSON a/k/a "Key-Thang," [28] MONTEZ HALL, a/k/a "Tez," and [29] CEDRIC WOODS, a/k/a "Lil' Ced," and others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, murder in aid of racketeering, as set forth in Count Six of this Superseding Indictment, which is incorporated here.
>
> All in violation of Title 18, United States Code, Section 924(c) and 2.

(Crim. Doc. No. 1147, at 41.)

Count Six, which is expressly incorporated into Count Seven, charged that the same three defendants,

> for the purpose of maintaining and increasing their positions in the Bloods gang, an enterprise engaged in racketeering activity, did murder Alexandra Franklin, in violation of the laws of the State of Tennessee, that is Tennessee Code Annotated

Sections 39-13-201, 39-13-202, 39-11-401, and 39-11-402.[2]

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

(*Id.* at 40.) Section 1959 is referred to as the Violent Crimes in Aid of Racketeering Activity statute, or "VICAR."

The Plea Agreement described the VICAR murder charged in Count Six and recited that Hall participated in the murder, a fact he admitted at the plea hearing, even though the Plea Agreement called for the dismissal of Count Six. (*See* Plea Agreement, Crim. Doc. No. 1394, at 12; Plea Hr'g Tr., Crim. Doc. No. 2187, at 10–11, 16–18.) More specifically, he admitted that on July 19, 2008 he and his two co-defendants, while riding in a vehicle driven by a fourth individual, shot and killed Alexandra Franklin. (Crim. Doc. No. 1394, at 12; Doc. No. 2187, at 11.) Hall acknowledged that, because he discharged a firearm during and in relation to this crime of violence, the guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(iii), as charged in Count Seven, was 120 months, consecutive to any other prison term imposed. (Crim. Doc. No. 1394, at 14.) Hall expressly waived the right to "appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty" and, in addition, "knowingly waive[d] the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255." (*Id.* at 17.) The government likewise waived the right to "appeal any sentence within or above the guideline range associated with the Recommended Offense Level when combined with the defendant's criminal history category." (*Id.* at 18.)

---

[2] Tenn. Code Ann. § 39-13-201 defines criminal homicide as the unlawful killing of another and states that the term encompasses first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide. Section 39-13-202 defines first degree murder and sets the punishments that may be imposed for the crime. Sections 39-11-401 and -402 address criminal responsibility.

On May 31, 2012, the court sentenced Hall to 360 months of incarceration—240 months on Count One (a downward variance from the advisory guideline range of 360 months to life) and a consecutive 120 months on Count Seven—all to run consecutively to a separately imposed state sentence. Judgment was entered on June 6, 2012. (Crim. Doc. No. 1767.)[3]

The court denied as untimely Hall's first § 2255 motion, which raised claims of ineffective assistance of counsel and violations of his right to due process. In January 2020, Hall filed in the United States Court of Appeals for the Sixth Circuit a corrected motion for authorization to file a second or successive § 2255 motion, based on the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). On June 29, 2020, the Sixth Circuit granted the motion. *In re Hall*, No. 19-6223 (6th Cir. June 29, 2020). The Sixth Circuit declined to consider whether Hall's waiver of the right to file a § 2255 motion, contained in the Plea Agreement, barred such authorization and expressly left the issue of waiver to be decided by the district court. *See id.* at 3.

Hall filed the instant Motion to Vacate, through counsel, on July 24, 2020, asking that his § 924(c) conviction be vacated. He argues that the predicate offense—which he identifies as murder in violation of Tennessee law—is not a "crime of violence," because § 924(c)'s residual clause is unconstitutionally vague, as the Supreme Court held in *Davis*, and because the statute's "force clause" requires violent force, which first degree murder, as defined by the Tennessee courts, does not satisfy.

The government opposes the Motion to Vacate on the grounds that: (1) Hall knowingly and voluntarily waived the right to collaterally attack his sentence when he entered into the Plea

---

[3] At the time, Hall was serving a twelve-year state sentence for his role in an unrelated murder that took place in November 2009. This court specified that the thirty-year federal sentence would run consecutively to the state sentence. (*See* Judgment, Crim. Doc. No. 1767, at 2.) Counsel for the defendant represents that Hall was released from his state sentence and began serving his federal sentence in late 2018. (Doc. No. 1, at 4.)

Agreement; (2) Hall's claim is procedurally defaulted, and the default is not excused by a showing of either prejudice or actual innocence; (3) VICAR murder, in violation of § 1959(a)(1), is the predicate offense, and it categorically qualifies as a crime of violence; and (4) alternatively, first degree murder under Tennessee law is also a crime of violence for purposes of § 924(c).

## II.    LEGAL FRAMEWORK

### A.    28 U.S.C. § 2255

Section 2255 provides a statutory mechanism for challenging the imposition of a federal conviction or sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under § 2255, a movant "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are outside the scope of § 2255 relief, except under rare circumstances. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). In § 2255 proceedings, it is the movant's burden to show his entitlement to relief. *Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). Generally, claims that a movant failed to raise at trial or on direct review are procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 motion unless he can establish cause and prejudice to excuse his failure or establish actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

A motion under § 2255 is subject to a one-year statute of limitations, running from the latest of four possible triggering events, including "the date on which the judgment of conviction becomes final" and "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1), (3).

If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). However, "there is no reason to conduct an evidentiary hearing to resolve a purely legal issue." *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983). Here, the movant's § 2255 motion only presents legal issues, rather than factual ones. Thus, having reviewed the pleadings, briefs, and records filed in the underlying criminal case, as well as the filings in this case, the court finds it unnecessary to hold an evidentiary hearing.

### B.     18 U.S.C. § 924(c)

Section 924(c) provides enhanced penalties for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). An individual convicted of a crime of violence during which a firearm is discharged is subject to a mandatory minimum sentence of ten years "in addition to the punishment provided" for the underlying crime of violence. 18 U.S.C. § 924(c)(1)(A)(i), (iii). Section 924(c)(3) defines "crime of violence" as "an offense that is a felony" and that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Courts commonly refer to § 924(c)(3)(A) as the "force clause" or "elements

clause" and to § 924(c)(3)(B) as the "residual clause."

In *Johnson v. United States* ("*Johnson II*"), 576 U.S. 591 (2015), the Supreme Court invalidated the so-called residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague under the Due Process Clause of the Fifth Amendment. 576 U.S. at 606. The Supreme Court later held that *Johnson II* was a substantive decision that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). On June 24, 2019, the Supreme Court held that § 924(c)(3)(B), like the ACCA's residual clause, is unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. The Sixth Circuit has held that *Davis* announced a new rule of constitutional law that retroactively applies to cases on collateral review. *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020).

## III. DISCUSSION

### A. Waiver

The government contends that the movant's motion to vacate under § 2255 is barred by the Plea Agreement's post-conviction waiver provision and that the waiver is enforceable under *Slusser v. United States*, 895 F.3d 437 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1291 (2019). (Doc. No. 7, at 9–17.) In response, Hall argues that (1) even if the waiver applies, it is unenforceable under *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), and *Vowell v. United States*, 938 F.3d 260 (6th Cir. 2019), because his ten-year sentence exceeds the maximum permissible sentence for Count Seven, which, in his view, is no punishment at all, and (2) based on its terms, the particular waiver here does not apply to a *Davis* challenge to the § 924(c) conviction, as this court and a Sixth Circuit panel have already held regarding virtually indistinguishable waivers. (Doc. No. 8, at 1–6.) The court finds the latter argument to have merit and, therefore, has no need to determine whether the waiver is otherwise unenforceable.

The waiver provision in the Plea Agreement states as follows:

> Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, . . . the defendant knowingly waives the right to appeal any sentence within or below the guideline range . . . as determined by the Court. The defendant also knowingly waives the right to challenge any sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 . . . . However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

(Plea Agreement, Crim. Doc. No. 1394, at 17.)

Notably, the waiver treats the matter of Hall's *conviction* ("the issue of guilt") and his *sentence* separately. In its first sentence, it addresses the waiver on "the issue of guilt"; that waiver extends only to the appeal process. In the second sentence, the language turns to Hall's waiver "[r]egarding sentencing." Here, Hall waived the right to appeal any sentence within or below the applicable guideline range *and* the right to collaterally challenge his sentence in a § 2255 motion. The language of the waiver says nothing about a collateral challenge *to the conviction*, which is what Hall brings here.

Based on essentially identical waivers contained in plea agreements, this court has already concluded at least twice in the last several months that motions challenging the movants' § 924(c) convictions were not barred by the collateral-attack waiver. *See Lee v. United States*, No. 3:19-cv-00850, 2020 WL 7425862, at *6 (M.D. Tenn. Dec. 18, 2020); *Serrano v. United States*, No. 3:19-CV-00719, 2020 WL 5653478, at *12 (M.D. Tenn. Sept. 23, 2020). The court adopts the reasoning set forth in those opinions, both of which relied in part on an order issued by the Sixth Circuit, authorizing a second or successive § 2255 motion by a defendant also sentenced by this court.

In *In re Brooks*, No. 19-6189, 2020 U.S. App. LEXIS 6371 (6th Cir. Feb. 28, 2020), this court had accepted a plea agreement again containing the same waiver language, and the defendant later sought to bring a § 2255 motion to challenge his § 924(c) conviction under *Davis*. The

government argued that the movant was not entitled to authorization to file a successive § 2255 motion in view of the waiver in his plea agreement. In response, Brooks made essentially the same argument that Hall makes here. The Sixth Circuit agreed with Brooks, explaining:

> [T]he waiver provides that Brooks waives only "the right to challenge [his] sentence"; it does not provide that he also waives the right to challenge his convictions—including his § 924(c) conviction that he seeks to challenge here. *See United States v. Spear*, 753 F.3d 964, 970 (9th Cir. 2014) ("[A] defendant's waiver of the right to appeal his sentence is distinct from a waiver of the right to appeal his conviction. . . . We therefore hold that a defendant's knowing and voluntary waiver of his right to appeal his sentence does not inherently encompass a knowing and voluntary waiver of his right to appeal his conviction."). This case is therefore distinguishable from *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007), in which we denied a motion for authorization because of a waiver provision that prevented the movant from collaterally attacking his conviction and sentence. Because Brooks seeks to challenge only his § 924(c) conviction, we find that the present motion is not barred by the collateral-attack waiver.

*Id.* at *3.

*Brooks* is fully applicable here, since the respective waivers are nearly identical and the movant challenges his conviction rather than his sentence, *per se*. As in *Brooks*, the court finds that Hall has not waived his right to challenge his § 924(c) conviction under *Davis*.

### B. Procedural Default

The government also argues that Hall procedurally defaulted his *Davis* claim by pleading guilty to Count Seven of the Second Superseding Indictment without raising a void-for-vagueness challenge to it or filing a direct appeal.

A § 2255 motion is not a substitute for a direct appeal. Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "'actually innocent.'" *Bousley*, 523 U.S. at 622 (citation omitted).

Hall concedes that his claim was procedurally defaulted, and he does not contend that he

is factually innocent. (Doc. No. 8, at 6–7 & n.7.) Instead, he asserts that he can establish the requisite cause and prejudice to overcome the default. The government concedes that Hall had good cause for the procedural default. (Doc. No. 7, at 22.) The court's focus, therefore, is on prejudice.

To show prejudice to excuse default, a movant must show "'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168. "The actual prejudice standard used on collateral review is more difficult for the movant to meet than is the plain error standard of Fed. R Crim. P. 52(b), which is used on direct appeal." *Napier v. United States*, 159 F.3d 956, 961–62 (6th Cir. 1998) (citing *Frady*, 456 U.S. at 166; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see also United States v. Walker*, 214 F. Supp. 3d 866, 872 (N.D. Cal. 2016) ("The Supreme Court has not defined the level of prejudice necessary to overcome procedural default but it has held that the level is 'significantly greater than that necessary under the more vague inquiry suggested by the words plain error.'" (quoting *Murray v. Carrier*, 477 U.S. 488, 493–94 (1986))). On collateral review, the movant seeking to establish actual prejudice "'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Napier*, 159 F.3d at 962 (quoting *Frady*, 456 U.S. at 170) (emphasis in original). In the context of a plea agreement, plain error review would require a defendant to show that "there is a reasonable probability that, but for the error he would not have pleaded guilty." *United States v. Dussard*, 967 F.3d 149, 156 (2d Cir 2020) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)).

Courts recognize that the question of prejudice is "intertwined with a merits analysis." *United States v. Garcia*, 811 F. App'x 472, 480 (10th Cir. 2020); *see also Lassend v. United States*,

898 F.3d 115, 123 (1st Cir. 2018) ("If . . . the prior convictions . . . are not violent felonies, [the movant] can argue actual prejudice because his sentence was undoubtedly influenced by the determination that he had qualifying ACCA predicates. On the other hand, if [the movant's] challenge fails on the merits, there cannot be actual prejudice because there would be no error from which such prejudice would flow.").

The government seeks to divorce the prejudice question from the merits question, essentially positing that, even if Hall were correct on the merits, he cannot establish that his failure to raise a *Davis*-type claim before pleading guilty was prejudicial, because, if he had challenged his indictment on Count Seven prior to pleading guilty to it, he likely would have been convicted of other crimes instead and sentenced to even more time. (Doc. No. 7, at 22.) As Hall notes, however, the cases the government cites in support of this proposition are distinguishable, and the court is not persuaded that the type of speculative inquiry the government envisions is warranted.[4]

Regardless, this line of inquiry would be purely academic in this case. The court finds, as discussed below, that Hall is not entitled to relief on the merits of his claim. As a result, he cannot show the requisite prejudice.

C.    The Merits of the § 924(c) Claim

The predicate crime in his case is not, technically, first degree murder under Tennessee statute. Rather, Count Seven charged Hall with violating § 924(c) by using a firearm during and in relation to the crime of "murder in aid of racketeering, as set forth in Count Six of this

---

[4] The government relies on *Nagi v. United States*, 90 F.3d 130 (6th Cir. 1996), which, as this court has previously recognized, "did not involve a constitutional violation" but a guidelines-calculation error, *see Serrano*, 2020 WL 5653478, at *9, and on *Dussard*, which involved the application of the plain-error doctrine on direct appeal and implicated a plea agreement provision that allowed the prosecutor to re-indict the defendant on dismissed charges if he were to prevail. 967 F.3d at 157–58.

Superseding Indictment." (Crim. Doc. No. 1147, at 41.) And, while Count Six referenced Tennessee's first degree murder statute, it ultimately charged Hall with violating 18 U.S.C. § 1959(a)(1) by committing murder in aid of racketeering. *Accord Moore v. United States*, No. 18-2172, 2019 WL 5152777 (6th Cir. Feb. 6, 2019). Thus, the sole question presented in this case is whether VICAR murder qualifies as a crime of violence for purposes of § 924(c).[5]

Hall argues that it does not, because, under Tennessee law, applying a categorical analysis, the court "must 'presume that the [underlying] conviction[6] rested upon nothing more than the least of the acts criminalized.'" *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)). Applying such a categorical approach, he claims, must result in the conclusion that first degree murder under Tennessee law is not categorically a crime of violence, because Tennessee courts recognize that the state's definition of first degree murder encompasses murder by starvation and dehydration. (Doc. No. 1, at 6 (citing *State v. Bordis*, No. 01C01-9211-CR-358, 1994 Tenn. Crim. App. LEXIS 783, at *33 (Tenn. Ct. Crim. App. Dec. 1, 1994). Hall argues that murder by a failure to act—the withholding of

---

[5] As Judge Thapar noted in his concurrence with the order granting Hall leave to file this successive § 2255 motion, "the fact that there's any uncertainty about . . . whether first-degree murder is a 'crime of violence'"—particularly when the conviction is for "knowingly us[ing] and carry[ing] a firearm during an in relation to, and possess[ing] a firearm in furtherance of" that crime—"just goes to show the absurdity of the so-called 'categorical approach'" as applied to § 924(c) convictions. *In re Hall*, No. 19-6223, slip op. at 3 (6th Cir. June 29, 2020) (Thapar, J., concurring). "But until Congress or the Supreme Court tells us otherwise, we must continue to entertain such absurd possibilities." *Id.*

[6] Of course, the § 924(c) conviction in this case does not rest upon an underlying *conviction* but an underlying crime of violence. Courts recognize that § 924(c) does not require that the defendant be convicted of, or even charged with, the underlying crime of violence. *See United States v. Smith*, 182 F.3d 452, 457 (6th Cir. 1999) (noting that the language of § 924(c) "requires only that the defendant have committed a violent crime *for which he may be prosecuted* in federal court. It does not even require that the crime be charged; *a fortiori*, it does not require that he be convicted."). This fact further compounds the absurdity of a categorical approach that would require the parsing of the state statute underlying the (admitted) violation of § 1959(a) through murder in aid of racketeering.

nourishment—does not satisfy § 924(c)'s force clause, because it does not involve *physical* force

as that term has been defined by the Supreme Court in *Johnson v. United States* ("*Johnson I*"), 559

U.S. 133, 138 (2010).[7]

> The VICAR statute provides in relevant part as follows:
>
> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
>
> > (1) for murder, by death or life imprisonment, or a fine under this title, or both. . . .

18 U.S.C.A. § 1959(a)(1).

The Sixth Circuit has held that a challenge to a § 924(c) conviction premised on a violation

of § 1959(a) requires a categorical approach to the elements of the crime as defined by § 1959, and

that § 1959(a) is "divisible," insofar as the different statutory alternatives carry different

---

[7] He also relies on *United States v. Scott*, 954 F.3d 74 (2d Cir. 2020), and *United States v. Mayo*, 901 F.3d 218 (3d Cir. 2018). In *Scott*, the Second Circuit affirmed the vacatur of the defendant's conviction under the ACCA, based on the court's conclusion that the defendant's prior New York convictions for first degree manslaughter did not qualify as violent felonies for purposes of the ACCA. Under New York law, this offense could be committed by "inaction in the face of a duty to act," such as the failure of "a person having a legal duty to provide care to another who, with intent to cause serious physical harm, fails to seek medical help when his ward requires it." *Scott*, 954 F.3d at 83, 87. The court held that such killing by omission did not satisfy the force clause. *See id.* at 87 ("We therefore hold that New York first-degree manslaughter is not a crime of violence under the force clause of ACCA because it can be committed by inaction, while the ordinary meaning of the terms of ACCA are not satisfied by inaction."). Similarly, in *Mayo*, the Third Circuit granted a § 2255 motion, vacating a conviction under the ACCA, on the basis that the movant's prior conviction for aggravated assault did not qualify as a "violent felony," since the offense as defined by state law could be committed through the "deliberate failure to provide food or medical care," thereby causing serious bodily injury. *Mayo*, 901 F.3d at 227. Neither of these cases actually involved first degree murder and, even if they had, they appear to be outliers.

punishments, identified in § 1959(a)(1) through (6). *See Manners v. United States*, 947 F.3d 377, 380 (6th Cir. 2020) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016)). In *Manners*, the predicate offense was assault with a dangerous weapon in violation of § 1959(a)(3). The Sixth Circuit applied the categorical approach and concluded that establishing this offense required proof of the elements of the violation of § 1959(a)(3), without reference to the underlying state statute criminalizing "assault" *per se*. That is, the § 924(c) conviction required "proof that the defendant committed 1) an assault 2) with a dangerous weapon 3) in furtherance of racketeering activity." *Manners*, 947 F.3d at 380.[8]

The Sixth Circuit has not considered whether murder in aid of racketeering, with reference to Tennessee's first degree murder statute, constitutes a crime of violence for purposes of § 924(c), or whether the categorical approach required by *Davis* extends to the state crime underlying the § 1959(a) violation. However, to the court's knowledge, every federal circuit or district court that has considered the question of whether VICAR murder (or murder under the ACCA) is a crime of violence has concluded that it is. Some of the courts reaching that holding have extended the categorical approach to the elements of the underlying state statute identified in the charging documents, while others have applied a generic definition of murder. Regardless of the approach employed and regardless of how broadly murder is defined by the underlying state statute, courts have unanimously agreed that murder, including murder by starvation or other acts of omission, is

---

[8] The court did not cross reference the underlying state statute, likely because "[t]he main dispute [was] whether the 'dangerous weapon' part of 'assault with a dangerous weapon in aid of racketeering' . . . necessarily renders this offense a crime of violence." *Manners*, 947 F.3d at 380. The court concluded that it did, applying the "deadly weapon rule" in this context. *Id.* at 380–81 ("[The deadly weapon rule] states: 'When a felony must be committed with a deadly weapon and involves some degree or threat of physical force, it is a crime of violence under the elements clause.'" (quoting *United States v. Burris*, 912 F.3d 386, 405 (6th Cir.) (en banc), *cert. denied*, 140 S. Ct. 90 (2019))).

a crime of violence.

For instance, the Fourth Circuit has held that first degree murder under a Virginia statute, which expressly includes "murder . . . by poison, lying in wait, imprisonment, [and] starving," Va. Code § 18.2-32, is a crime of violence for purposes of § 924(c). *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019), and *Stokes v. United States*, 140 S. Ct. 640 (2019). In *Mathis*, the court rejected the defendants' argument to the contrary, which mirrors that of Hall here:

> The capital defendants contend that Virginia's definition of first-degree murder . . . does not require the use or threatened use of force against another, because a defendant can violate the statute by using non-violent, indirect means, such as "poison[ing]" a victim. . . .
>
> This line of reasoning, however, is foreclosed by the Supreme Court's decision in *United States v. Castleman*, in which the Court held that "physical force is simply force exerted by and through" human action and that, therefore, a person need not "directly" touch his victim to exert "physical force." Accordingly, so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent. . . .
>
> A conviction for first-degree murder under Virginia law requires the "willful, deliberate, and premeditated" killing of another. Va. Code § 18.2-32. Murder requires the use of force capable of causing physical pain or injury to another person irrespective whether that force is exerted directly or indirectly by a defendant. Therefore, we conclude that the crime of first-degree murder under Virginia law qualifies categorically as a crime of violence under the force clause . . . .

*Id.* 264–65 (quoting *Castleman*, 572 U.S. 157, 170−71 (2014); other internal citations and quotation marks omitted).

Similarly, in *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018), the court held that attempted murder under Iowa law was a crime of violence for purposes of U.S.S.G. § 2K1.1(a)(4)(A), rejecting the defendant's argument that the statute was too broad because it would extend to "a care-giver failing to provide sustenance to a dependent." The court stated:

> The phrase "any act by which the person expects to set in motion a force or chain of events" would include omissions as Peeples argues. However, the statute still

> requires the use of force, satisfying the violent force requirement under the Guidelines. In Peeples's example of a care-giver refusing to feed a dependent, it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force. It does not matter that the harm occurs indirectly as a result of malnutrition. Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force.

*Id.* (citing Castleman, 572 U.S. 170−71). *Accord United States v. Sierra*, 782 F. App'x 16, 20–21 & n.2 (2d Cir. 2019) (affirming a § 924(c) conviction predicated on murder-in-aid-of-racketeering, holding that it was "self-evident that under New York law 'attempted murder is a crime unmistakably involving the use of physical force'" and, therefore, "that murder is a crime involving the use of such force."); *Boykin v. United States*, No. 16 CV 4185 (CM), 2020 WL 774293, at *1 (S.D.N.Y. Feb. 18, 2020) ("[M]urder itself is a crime of violence under § 924(c)(3)(A), the constitutionality of which was not affected by the ruling in *Davis*. Contrary to Boykin's strained argument, the crime of murder has always been understood to be a crime of violence—indeed, the ultimate crime of violence. . . ."); *id.* at *8 ("After *Castleman*, every Circuit but one has concluded that [an] act[] of omission such as withholding food or medicine . . . qualifies as an act of physical force."); *United States v. Davis*, No. 4:18-cr-00011, 2019 WL 3307235, at *3–6 (W.D. Va. July 23, 2019) (holding that first degree murder under Virginia statute, which expressly includes "murder . . . by starvation," constitutes a crime of violence, and citing five other Virginia district court cases ruling consistently); *Umaña v. United States*, 229 F. Supp. 3d 388, 396–97 (W.D.N.C. 2017) (holding that murder in violation of North Carolina law is a crime of violence for purposes of a § 924(c) conviction premised upon VICAR murder, even though North Carolina's first degree murder statute expressly includes killing by starvation); *see also United States v. Arnold*, No. 15-20652-01, 2019 WL 5842925, at *2–3 (E.D. Mich. Nov. 7, 2019) (denying pretrial motion to dismiss § 924(c) claim, noting that "courts differ on whether to analyze the general federal offense or the specific state offense charged in the indictment, but they all arrive

at the same conclusion: that VICAR murder is a crime of violence"); *Shrader v. United States*, No. 1:09-CR-00270, 2019 WL 4040573, at *2–3 (S.D.W. Va. Aug. 27, 2019) (holding that murder under West Virginia law, defined to include "[m]urder by poison, lying in wait, imprisonment, [and] starving," is a violent felony for purposes of the ACCA (quoting W. Va. Code § 61-2-1)); *United States v. Kirby*, No. CR 11-282 JAP, 2017 WL 4539291, at *11 (D.N.M. Feb. 16, 2017) (holding that murder under New Mexico law qualifies as a violent felony under the ACCA, stating: "Surely the intentional infliction of causes resulting in the effect of dying of starvation or thirst amounts to 'force capable of causing physical pain or injury to another person.'" (quoting *Johnson I*, 559 U.S. at 140)).

Hall, in other words, is swimming upstream. This court agrees with those courts finding that first degree murder constitutes a crime of violence for purposes of the force clause of § 924(c)(3), even assuming, without deciding, that Tennessee's definition of first degree murder is the relevant definition of the offense and that the categorical approach requires the court to determine whether murder perpetrated by starvation employs the requisite degree of "force."[9] Specifically, as the Eighth Circuit recognized, the act of withholding food with the intent to cause a dependent to starve to death constitutes the requisite use of force. "It does not matter that the harm occurs indirectly as a result of malnutrition. Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force." *Peeples*, 879 F.3d at 287. Even the Tennessee murder-by-starvation case upon which Hall relies refers to a "pattern or multiple incidents of serious bodily injury suffered by the victim [that] were 'inflicted' by the

---

[9] The court is not persuaded that a categorical approach that takes into consideration the underlying state statute is appropriate in the context of a § 924(c) conviction premised upon VICAR murder in violation of § 1959(a)(1), which, after all, requires, not simply murder, but murder *in aid of racketeering*.

defendant's failure to feed the victim." *State v. Bordis*, No. 01C01-9211-CR-00358, 1994 WL 672595, at *12 (Tenn. Crim. App. Dec. 1, 1994). Consequently, the court holds that murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), is a crime of violence under 18 U.S.C. § 924(c)(3)(A), for purposes of a conviction under § 924(c)(1)(A).

## IV. CONCLUSION

For the reasons set forth herein, the court finds that Hall is not entitled to relief under § 2255, and his motion will be denied.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge